## A96A1678. WOODS v. THE STATE.
### (479 SE2d 414)

BLACKBURN, Judge.

Albert J. Woods appeals his conviction for possession of cocaine with intent to distribute, asserting that the trial court erred in deciding numerous issues including permitting a Georgia Bureau of Investigation (GBI) employee to remain on the jury panel, denying Woods' *Batson* motion, admitting similar transaction evidence, instructing the jury on various legal principles, recharging the jury in response to questions raised during deliberations, and in sentencing Woods to life in prison.

Viewing the evidence in the light most favorable to the verdict, in the early morning hours of October 15, 1994, Sgt. Michael Atkinson and Sgt. Tom Fleischman were driving an unmarked car in an area of Acworth known for its drug activity when they first observed a white sport utility vehicle. Woods was a passenger in the vehicle which was driven by his co-defendant, Herbert Lee Perkinson. Twice the officers circled the block. Each time they passed Perkinson's vehicle, they were signalled by its flashing lights. Sgt. Fleischman, who was in uniform, ducked down while Sgt. Atkinson drove up to the vehicle and spoke with Perkinson. When Perkinson asked the officer "how much do you want," the officer replied "two." Perkinson then stated that "his boy" would be back in a minute and instructed Sgt. Atkinson to drive around the block. When they returned, the two officers spotted a blue car parked by Perkinson's vehicle and another person leaning into the passenger side of that vehicle. As the officers approached, the other blue car drove away. Both officers exited their automobile and identified themselves as policemen. Woods was observed reaching towards the car's floorboard or console area and then throwing an object outside the car window. The object, a plastic baggie, contained approximately eight rocks of crack cocaine. At trial, Woods claimed that he was merely present when these events took place, that he did not actively participate in the transaction, and that he did not throw the cocaine out of the car window.

1. Woods contends that the trial court erred in failing to excuse for cause a juror who was employed by the GBI. This juror worked in

the Georgia Crime Information Center, teaching others how to use the information system and access criminal histories. Assuming without deciding that Woods correctly preserved this enumeration for appellate review, there is no error.

Under *Hutcheson v. State*, 246 Ga. 13, 14 (1) (268 SE2d 643) (1980), prospective jurors who are employed as full-time police officers must be excused if challenged for cause. However, the excusal rule of *Hutcheson* has not been automatically applied to all individuals connected in some manner with law enforcement. See *Denison v. State*, 258 Ga. 690, 691 (4) (373 SE2d 503) (1988) (part-time police officers not automatically excluded); *Wilson v. State*, 250 Ga. 630, 635 (4) (300 SE2d 640) (1983) (no automatic exclusion for reserve police officers); *Thompson v. State*, 212 Ga. App. 175, 176 (1) (442 SE2d 771) (1994) (full-time corrections officers without arrest powers not automatically excluded); *Smith v. State*, 201 Ga. App. 82 (1) (410 SE2d 202) (1991) (automatic exclusion inapplicable to retired police officers); and *Dixon v. State*, 180 Ga. App. 222, 225 (5) (348 SE2d 742) (1986) (security guards not automatically excluded). See also *Wellons v. State*, 266 Ga. 77, 84 (463 SE2d 868) (1995) (State Crime Lab forensic expert who frequently testified on behalf of the State in criminal cases and who personally knew many witnesses not automatically excluded).

*Stocks v. State*, 182 Ga. App. 162 (355 SE2d 103) (1987) is similar to this case. In *Stocks*, the prospective juror was employed as a driver's license examiner with the Georgia State Patrol. Id. In this capacity, he had no arresting authority and no police powers. Noting that "his sole function is administrative" and that he stated he could be fair and impartial towards the defendant, this Court affirmed the trial court's decision to overrule the challenge for cause. Id. Citing *Kent v. State*, 179 Ga. App. 131 (345 SE2d 669) (1986), it was held that "such limited police powers do not necessitate the imputation of possible bias as in the instance of full-time police officers." (Punctuation omitted.) *Stocks*, supra at 163.

In this case, the prospective juror was employed by the GBI as an instructor. As in *Stocks*, this prospective juror's job is administrative, not investigatory or prosecutorial. Also as in *Stocks*, this juror stated that he was not a sworn law enforcement officer, and that he was impartial about the case. The automatic exclusion rule of *Hutcheson*, supra, is therefore inapplicable to this case, and the trial court did not err in refusing to excuse this juror for cause.

2. Woods contends that the trial court erred in denying his *Batson* motion, which asserted that the State had exercised one peremptory challenge in a racially discriminatory manner. The prosecutor explained that the strike was based on (1) the juror's young age which put him in a class with many who experiment with drug use,

and (2) the juror's status as a drafting student, a field where, in the prosecutor's experience, students generally tend to be more tolerant of drug use. Woods claimed this explanation was pretextual. See *Chunn v. State*, 210 Ga. App. 209, 211 (435 SE2d 728) (1993) (explanations for a peremptory challenge must be adequately explained and "must be related to the case to be tried"). After the State offered its explanation, the trial court gave Woods the opportunity to view the jury panel and determine if the State accepted anyone who was a college student or in the same age bracket as the juror that was struck. After viewing the jury, Woods made no objection.

The trial court accepted the explanation and found no discriminatory intent on behalf of the State. In reviewing the trial court's determination on a *Batson* motion, "[t]he trial court's factual findings must be given great deference and may be disregarded only if clearly erroneous." (Punctuation omitted.) *Jackson v. State*, 220 Ga. App. 98, 99 (469 SE2d 264) (1996).

In this case, it is not necessary to address whether Woods established a prima facie case of discrimination; we need only address the sufficiency of the State's explanation for exercising the peremptory strike.[1] "[T]he proponent of the strike is not required to enunciate an explanation that is persuasive, or even plausible. Rather, a neutral explanation means an explanation based on something other than the race of the juror. Unless a discriminatory intent is inherent in the proponent's explanation, the reason offered will be deemed race neutral. Furthermore, although the proponent of the strike must provide a clear and reasonably specific explanation of his legitimate reasons for exercising the challenges, what is meant by a legitimate reason is not a reason that makes sense, but a reason that does not deny equal protection." (Citations and punctuation omitted.) *Cooper v. State*, 220 Ga. App. 531, 532 (469 SE2d 790) (1996).

In this case, the State's concerns about the juror's age and field of study were related to the case to be tried, and such characteristics are not "peculiar to any race." (Punctuation omitted.) *Trice v. State*, 266 Ga. 102, 103 (464 SE2d 205) (1995). Moreover, Woods "failed to establish that the reasons given by the State were merely pretexts for purposeful racial discrimination." *Henry v. State*, 265 Ga. 732, 734

---

[1] The record reflects that there were four blacks on the jury panel. In addition to the juror who was struck, two were accepted by the State and one was not reached. "The initial question [in evaluating a challenge under *Batson*] is whether appellant established a prima facie case of discrimination to trigger the prosecutor's duty to give racially neutral reasons for the exercise of his challenged peremptory strikes. However, once a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing becomes moot." (Punctuation omitted.) *Lewis v. State*, 262 Ga. 679, 680 (424 SE2d 626) (1993).

(462 SE2d 737) (1995). Therefore, the trial court's decision to accept the State's explanation as being race neutral is not clearly erroneous, and this enumeration is without merit.

3. Woods asserts that the trial court erred in permitting the State to introduce evidence of his prior guilty plea for the sale of crack cocaine, as there was insufficient similarity between the prior transaction and the conduct alleged in his indictment. In both cases, the crimes occurred at night in a residential area known for drug activity; Woods or his companion initiated a drug sale with a passing motorist; and Woods had multiple dosage units of crack cocaine in his possession. A similar transaction need not be identical in order to be admissible. *Dobbs v. State*, 204 Ga. App. 83, 85 (418 SE2d 443) (1992). "The ultimate issue in determining admissibility of similar transaction evidence is not mere similarity but relevance to the issues of the case on trial." *Obiozor v. State*, 213 Ga. App. 523, 526 (445 SE2d 553) (1994). In the present matter, Woods acknowledged he was aware that a drug transaction was being consummated in his presence but denied that he actively participated in the sale. The trial court found that the similar transaction evidence indicated a common design and course of conduct from which the jury could infer Woods' intent to distribute in the present matter. The trial court did not err in admitting this evidence. See *Crutchfield v. State*, 218 Ga. App. 360, 361 (461 SE2d 555) (1995) (prior conviction for sale of cocaine permitted as evidence of defendant's intent to distribute cocaine).

4. Woods contends that the evidence outlined above was insufficient to support his conviction. Sufficient evidence exists to support the jury's determination that Woods was in possession of cocaine because an officer testified that it was Woods who threw the cocaine outside the car window. Sufficient evidence also supports the jury's determination that Woods had the intent to distribute cocaine. "While mere presence at the scene of the commission of a crime is not sufficient evidence to convict one of being a party thereto, presence, companionship, and conduct before and after the offense are circumstances from which one's participation in the criminal intent may be inferred." (Punctuation omitted.) *Looney v. State*, 221 Ga. App. 224, 225 (471 SE2d 243) (1996). Also, as indicated above, the similar transaction evidence further supports a finding that Woods had the intent to distribute. See *Crutchfield*, supra. Accordingly, we find that a rational trier of fact could have found beyond a reasonable doubt that Woods was guilty of the crime for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

5. Woods argues that the trial court improperly charged the jury in a manner that eradicated his defense of "mere presence." Pursuant to a pattern charge, the jury was instructed that if they found "the

defendant had no knowledge that a crime was being committed and that the defendant did not knowingly and intentionally commit, participate or help in the commission of the alleged offense, then it would be your duty to acquit the defendant." Woods asserts that this charge is contrary to the mere presence defense because, in order to acquit, it requires the jury to find not only that a defendant did not participate in the alleged crime but also that he had no knowledge of the same.

Reviewing the charge as a whole, the jury received a specific instruction on the defense of mere presence. It was also charged on the concepts of grave suspicion, mere association, and parties to a crime, as well as the State's burden of proving that Woods knowingly participated in the crime. Viewing the charge as a whole, the jury was properly instructed on Woods' mere presence defense. See *Marshall v. State*, 197 Ga. App. 762, 763 (399 SE2d 555) (1990) (when reviewing for error, an appellate court should not examine isolated portions of a charge but consider the charge in its entirety).

6. Woods contends that the trial court erred in giving the pattern charge on similar transaction evidence. However, because this specific charge was requested by Woods, he cannot now complain that it was given in error. *Simmons v. State*, 266 Ga. 223, 229 (466 SE2d 205) (1996).

7. Woods asserts that the trial court erred in charging on the four-year statute of limitation. While Woods admits that the charge correctly states the law, he contends that the charge did not adequately distinguish between the case on trial and the prior similar transaction such that the jury could convict him based upon evidence of his conduct. This enumeration is without merit. The jury was clearly informed that it could only convict Woods for the offense alleged in his indictment. Moreover, the jury was instructed as to the limited purpose for which the similar transaction evidence was admitted. Therefore, we find no evidence that the jury may have been misled by the charge as Woods contends. See *Dooley v. State*, 221 Ga. App. 245, 246 (470 SE2d 803) (1996) ("[a]s the charges given were correct statements of the law, and we do not believe that the charge as a whole would mislead a jury of average intelligence, we find no error").

8. Woods asserts that the trial court improperly charged the jury that "the phrase reasonable doubt applies to the degree of proof necessary to produce a mental and moral conclusion." Particularly, Woods argues that similar language describing reasonable doubt in terms of "moral and reasonable certainty" has been previously criticized. We find no merit in this argument. Assuming without deciding that the two phrases are so similar as to be treated the same, the Supreme Court recently held that use of the phrase "moral and

reasonable certainty" does not constitute reversible error when it appears in the context of a charge which "repeatedly and accurately" conveyed to the jury the concept of reasonable doubt. *Baldwin v. State*, 264 Ga. 664, 665 (449 SE2d 853) (1994). In the present matter, the jury received, almost verbatim, the pattern charge on reasonable doubt, a lengthy charge which we find "repeatedly and accurately" conveyed to the jury the concept of reasonable doubt. Therefore, this enumeration is without merit. See also *Dooley*, supra.

9. Woods contends that the trial court did not properly respond to the jury's questions. The record reveals that during its deliberation, the jury asked the court to explain the difference between mere knowledge of and active participation in a crime, and whether helping someone else get rid of evidence demonstrated active participation in a crime. After the foreperson told the court that a thorough recharge would be helpful, the trial court recharged the jury, giving substantially every instruction contained within the original charge. After the recharge, Woods responded to the court's inquiry that he had no objection to the recharge. Woods now contends that this recharge was error, asserting that the trial court should have limited its recharge to specific principles including party to a crime, mere presence and intent to distribute. By failing to object or reserve his right to later make exceptions in response to the trial court's inquiry regarding the recharge, Woods waived his right to seek appellate review of the recharge. *Lewis v. State*, 215 Ga. App. 161, 164 (450 SE2d 448) (1994).

Even if the error had been properly preserved, it is without merit. "It is well established that when the jury, after having received complete instructions on the law applicable to the case, returns to the courtroom and requests additional instruction on a particular point, the trial court may, in its discretion, either recharge the jury in full or confine the instruction to the particular point suggested by the jury's inquiry." (Punctuation omitted.) *Williams v. State*, 210 Ga. App. 357, 358 (436 SE2d 228) (1993). We find no abuse of discretion in the trial court's decision to recharge the jury with substantially the entire original charge.

10. Woods was sentenced to life in prison pursuant to former OCGA § 16-13-30 (d).[2] He asserts that this was error as he was not adequately notified of the State's intent to seek a life sentence. Woods' reliance on *Stephens v. State*, 219 Ga. App. 881 (467 SE2d 201) (1996) is misplaced. Unlike the defendant in *Stephens*, the record reveals the State provided Woods with pretrial notice that it

---

[2] Effective July 1, 1996, OCGA § 16-13-30 (d) was amended to provide that a second conviction for those drug offenses listed in OCGA § 16-13-30 (b) no longer requires a mandatory sentence of life imprisonment.

would use evidence of certain prior convictions in aggravation of Woods' sentence. See OCGA § 17-10-2 (a). Woods admits receiving a certified copy of at least one of those convictions prior to trial. Also, unlike the defendant in *Stephens,* Woods was afforded the opportunity to investigate and rebut the validity of these prior convictions. Accordingly, the trial court did not err in imposing a life sentence.

*Judgment affirmed. Senior Appellate Judge Harold R. Banke concurs. Beasley, C. J., concurs specially.*

BEASLEY, Chief Judge, concurring specially.

I concur in Division 1 of the majority opinion but point out that this case, like some of those cited as well as others which the appellate courts have decided, falls in the category of those which must be decided on a case-by-case basis. Full-time police officers, on the other hand, are automatically disqualified if challenged for principal cause. *Hutcheson v. State,* 246 Ga. 13, 14 (1) (268 SE2d 643) (1980), so held, stating that the reason is that "[i]t is inherent in the nature of police duties and the closeness with which such officers are identified with criminal procedures that questions regarding possible bias, fairness, prejudice or impermissible influence upon jury deliberations inevitably arise" despite subjective, sincere declarations of impartiality by the prospective juror. Impartiality is the key qualification for factfinders, and it must be assured. Like the two city police officers in *Hutcheson,* the state patrolman in *Harris v. State,* 255 Ga. 464 (2) (339 SE2d 712) (1986), was also subject to automatic excusal when challenged for principal cause.

Moving from this general category, the Supreme Court more recently considered a secretary in the appellate section of the district attorney's office, in *Beam v. State,* 260 Ga. 784, 785 (2) (400 SE2d 327) (1991). The majority held that she was disqualified because of her employment, for principal cause.

In comparing the employee in this case and the secretary, both worked full-time for governmental criminal justice agencies which investigate or prosecute crime, neither appeared as witnesses in criminal cases, and both declared an unbiased attitude towards the case and the jury's task. The difference is that the secretary was an employee of the same district attorney who prosecuted Beam.

Although a GBI forensic chemist who worked in the state crime laboratory testified in this case, the connection between the laboratory and the crime information center is more remote and of a different type than that between the secretary and her employer. In addition, no connection was shown between the introduction of defendant's prior offense and the work of the crime information center. And the relationship between this case and the crime information center employee who went out and taught how to use the sys-

tem and criminal histories is more remote than the relationship between the prosecution of Beam and the secretary whose employer was conducting the prosecution. The distinctions foreclose the disqualification of the GCIC employee for principal cause. See *Beam*, supra at 786, fn. 4.

The GCIC employee fits more appropriately in the category exemplified by the cases cited by the majority as well as *Jordan v. State*, 247 Ga. 328, 338 (6) (276 SE2d 224) (1981) (former police officers working for a state correctional facility); and *Todd v. State*, 261 Ga. 766, 771 (5) (410 SE2d 725) (1991) (Department of Public Safety driver's license examiner). Like these other criminal justice system personnel, the GCIC employee could only be challenged for favor, and none was shown.

I concur fully in the remainder of the opinion.

DECIDED NOVEMBER 27, 1996 —
RECONSIDERATION DENIED DECEMBER 17, 1996 — 

*Derek H. Jones*, for appellant.
*Thomas J. Charron, District Attorney, Debra H. Bernes, Assistant District Attorney*, for appellee.